The 2009 Notice of Disagreement put the question of the proper rating for Ms. De Hart's back condition to include lumbar radiculopathy into appellate stats. The Veterans Court erred when it found that radiculopathy was not in appellate status at the time of the Board's 2021 decision. Under this Court's decisions in Bean, the 2009 NOD put the proper rating for lumbar radiculopathy into appellate status, and subsequent AOJ decision that does not provide a full grant of benefits cannot resolve the pending claims. Is it fair to say that the key question here, put in less formal terms, is whether radiculopathy is a symptom of spondylolisthesis or is rather a secondary condition? That is an important question in this case. And if that question, if this case turns on that question, why is that not a factual issue that is not within our jurisdiction? Because this is a straight question of regulatory interpretation and a jurisdictional question. And those are squarely before this Court's legal questions. But what is it, what part of the regulation is it that we would be interpreting to make a determination as to whether it's a symptom or a secondary? The plain language of 4.25, 4.71a, and then in the alternative 3.155. Those are for, those regulations are key to this issue. I would also submit. I agree that they're key, but I don't see that those regulations or any interpretation of those regulations tell us which this is. That's my problem. And that gets to the nub of where the Veterans Court committed its legal error. It divested the Board in itself, really. They made it into a jurisdictional question because they went under a completely different kind of rubric or a completely, they went away from how this should be adjudicated. And so I'd also submit to Your Honor that the legal question here is ensuring that the Veterans Court adheres to its own precedent in Chavis and Bailey. To get to that legal question, don't you have to first deal with the factual issue that Judge Jim Bryson is bringing up? But the facts are not in dispute other than the legal, the facts are not in dispute in this case other than the legal framework that this should be used. There's really no factual dispute here. What's the legal framework, going back to the regulation? Yes, 4.25, 4.71. What is the language there that you're saying that the Veterans Court misinterpreted the language of those regulations? Well, it misinterpreted, where the Veterans Court committed its legal error is in saying that the Board of Veterans' Appeals had no jurisdiction to consider this because it called it a secondary, because it called it a secondary condition, whereas the plain language of the regulation calls this a complication or, to Your Honor's point, symptoms. Well, where in the regulation is there something we can look at and say, aha, this is a symptom, it's not a secondary condition? I would say 4.7. Secondary, yeah, secondary. I would say 4.71a, note one, and 4.25 were saying that separate ratings are appropriate for distinct manifestations, I'm looking at 4.25 now, Your Honor, saying that separate ratings are appropriate for distinct manifestations of a single disease entity, and that is where it sums up. Basically saying a symptom, a manifestation is a symptom, right? Correct, Your Honor. So there's no doubt that that's true, but that doesn't define what a secondary condition versus a symptom is. But if that's true, Your Honor, then we are squarely into a legal question. Because if we take that as true, and the Veterans Court said that the board now does not have jurisdiction over this, and that the claim stream basically remains open to 2008, now we are into the legal framework. And so yes, that regulation applies, and I take it that Your Honor is with me on that, saying that, clearly, we've got a symptom. So then that is the legal error here. No, no, no, wait, wait, wait. You say, I don't think I'm agreeing that it is a symptom. Okay, I'm sorry, Your Honor. Yeah, I'm saying I don't see where the regulation tells us whether it's a symptom or a secondary condition. Well, I would point, Your Honor, to continuing on from 4.25 to 4.71a, the note, and then the regulatory history, saying that BAT conditions, essentially paraphrasing from the regulatory history, which we discussed in our opening brief, basically that BAT conditions have a number of manifestations. And so the idea is... Going back to note one, what in note one tells us the answer to the question that I've posed? Note one says, evaluate... I believe I'm in the right note on the spine, 4.71a, note one, is that where you are? Yes, Your Honor. All right. It says, evaluate any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, separately under an appropriate diagnostic code. So, separate evaluation. And read in conjunction with 4.25, as well as the regulatory history, the radiculopathy is one of the complications that is commonly rated together with the spondylolisthesis and low BAT conditions. And how do I know that? Because of the way that this case developed, and we know that spondylolisthesis is part of the low BAT condition. And so, I'm trying to explain a little bit that that's how it should be rated, not as a secondary condition. And the way that VA considered this, even in 2019, Your Honor, illustrates that it was not understood to do that. Your Honor, this is a, that's a legal question that is within our jurisdiction, not a factual determination made by the Veterans Court. But what the, but because the board, because the board is saying that it does not have jurisdiction, and then the court upheld that there was no jurisdiction over this, because they parsed it out as a secondary condition, as opposed to all part of one claim, right, one claim for compensation. Because they did that, that's a legal error. This is a claim for compensation. It's not an effective date claim, and that's the legal question. If you were to agree that this was, that this condition was a secondary condition, not a symptom, would you still think that there's a legal error here? It would be a harder question. If it were, if it were like. Well, what would be the argument for why there would be a legal question here? If this were something separate, like the case in Manzanares, which the government relies on in their brief, where it was a back condition and then there was a secondary, there was an ankle condition claimed as secondary. If it were something that were, that were out of what is rated as, as a, as radiculopathy, which is related to the low back condition, I think it would fall more under Manzanares than it did under Grantham and Bean. And so I do think it would be a harder question, Your Honor, and, and it would get in more to factual findings. But that's not what happened here is we, we've got no question. We, we really don't have any question of facts other than where the veterans court went awry by parsing this out as a secondary condition and then kind of moving under that framework, under kind of the Manzanares, Ellington, that kind of framework, as opposed to staying where it belonged, considering that this is, that this is a lumbar radiculopathy, right leg lumbar radiculopathy related to the low back, manifested, manifested therefrom, and it should have been under that legal framework. And the fact that it was not is the legal error in this case. And then moving along to the fact that it basically said that it, well, it said that there was no jurisdiction for the board to consider this, and that's the legal question here. You also mentioned in passing that one of your issues, one of your legal questions was something about the veterans court issuing inconsistent opinions. It's our, it's, it's an argument in our opening brief and again in reply is that Chavis, Chavis and Bailey are veterans courts decisions that are on point here. There's really no difference, there's no difference between this case and Chavis. I mean, even assuming you were right in the board, in the CABC's discussion in those cases as incorrect, is that the kind of legal issue that we have, we would have authority to decide? I can't recall in 23 years of ever deciding a legal question. We rely on the ECRI case for this court mentioning that the, that the CABC, that the veterans court should adhere to its, to its settled principles. But, but. So you think that, if that, it turned out that were the centerpiece of your argument for why we have jurisdiction, really? It is not the centerpiece of my argument, Your Honor. And then you keep on talking about, when we talked about legal questions or legal issues, you said a couple times, the legal framework. Is that what you're calling the legal issue, is the framework? The legal, the, yes, the legal framework is, is a legal question before this court, but also the jurisdiction question of whether the board has jurisdiction to consider from the, the AOJ's decision in this case back to 2008 to consider this whole claim stream open for radiculopathy. And the board declined. Don't you think in a typical veterans case, I don't like using the word jurisdiction because I don't like using the word jurisdiction, but in a typical veterans case, what the board has authority to review is predicated on what the NOD says? Yes. Okay. So the issue here would be whether the NOD covered that. The NOD covered that situation. Yes. Because the, the NOD going back to 2009 was a broad NOD saying she wanted a higher rating for the back. That, that continued on until. So you think saying in an NOD, I want a higher rating for the back. She got a 0% right for the back. Right. That includes all subsequent manifestations of whether we're calling them secondary effects or. Well, in this case, it doesn't. I'm sorry. All symptoms. In this case, there was evidence of the radiculopathy at the time. So there was really no subsequent, it's not a subsequent situation. Although I, to answer your honor's question, yes, an NOD could encompass subsequent manifestations as long as it remains on appeal and, and, and the back conditions on appeal. Because the NOD didn't refer to this condition specifically, right? The NOD was for the back and this is under, under 4.71 and 4.25, part of the back condition that needs to be rated. And so this is a compensation. That is the key question though, is whether it is part of the back condition or whether it's a secondary condition. If, if it's the latter, then the NOD, I take it under a fairly well settled law would not be sufficient to raise this. Is that correct? If it is a, if it is a secondary condition and not a complication, yes, your honor.  So we get back to that question. And that question, if factual, is outside of our jurisdiction. If it's factual. If it is factual, if that is a factual inquiry, but given the tenor of this case, I, that is not the factual inquiry here because there are so many legal questions as to, not to, not to use the word, but as to, not as to, not to use the word jurisdiction. I want to stay away from that. But that, that there is this claim, the, the, the compensation question has not been fully answered because of legal error of the Veterans Court. Can I just ask kind of a factual related question? Her, her exam, which demonstrated the 20%, she got it in 2019? That is correct. Right. That was for a, and how would we even know? Assuming we could get into this stuff, how would we even know whether that 20% rating should go back to 2008 or 2009? How, how, how does one ascertain that in hindsight? Because of the notice of disagreement. Did the notice of disagreement explicitly ask and submit medical evidence that she was entitled to a 20% rating? It did not. It, the, the notice of disagreement was broad, said she wanted more for the back. And because of the regulations, 4.71, 4.25, all the regulations that we cited in here, the lumbar radiculopathy should be rated as a complication from a lumbar spine conditions. Lumbar radiculopathy, lumbar spine condition. And so that is the... But how do we even know since there was no medical analysis or specificity in terms of what you were seeking as a claim? How do you, even if you were right on everything else, how do you go back 10 years in the record and give her a 20% rating? Why would we not, even if you were right in terms of this being included in our analysis here, why could it have been 0%? It could have been 5%? You would look, Your Honor, at the record. This is a legacy case. And so it happens all the time that there's a, that there's a, a, a claim stream open back in time. And you look at the evidence of record. There was, in this particular case, there was evidence of this radiculopathy. You can also get retroactive examinations. You can ask this question, the duty to assist, this is not an AMA case, this is a legacy case. The duty to assist is still attaching here. And VA can go and develop evidence. You can go back in time. You can look at the lay evidence. You don't have to have a doctor's opinion just in 2019 saying this. There's still development to be had. And there is still record that they have not even looked at.  Could you, before you sit down here, quick, quick question. When does a determination assume adjudicative identity? We have a determined, the decision of the, of the, the VA has a separate distinct finding or decision with respect to the lower extremity, the right leg. Isn't that enough to, for this particular part of the claim to assume as adjudicative identity? By adjudicative identity, do you mean that they severed it off kind of as its own, as its own rating and as its own inquiry? And so it has an, that's a new adjudicative inquiry? It has a right to appeal to the appellate process at that point. Yes, there is a right to appeal it. But it's not necessary to appeal it as different when under the regulatory framework, it is part of the back condition. And so it's still a claim for compensation. Because I see this as a legal question involved here. That is, that is a legal question as well. It has to do with, it has to do with how the adjudicative tenor or the adjudicative question in this case, how they should have adjudicated this condition. So I do agree with your honor. Well, except isn't one of the arguable answers to that, that what determines what's to be adjudicated in step two is based on what the NMD raises as the issues, right? Isn't that the way the game is, the system works? Yes. Okay. Yes, your honor. It seems that if once you assume the adjudicative identity, then a nod was definitely required. And it was filed in 2009. And the question is what the scope of the nod covers. That is, that is one of the questions. That's really the central question in the case, right? I'm sorry? It's the central question in the case. Yes, your honor. Yeah, all right. It is. Why don't we give the government a moment? Thank you, your honor. May it please the court. Good morning. The Veterans Court's decision should be affirmed. The VA concluded in 2019 that Ms. DeHart's radiculopathy was secondary to her spinal condition, which is the phrase I'm going to use. I'm not quite as brave as Judge Bryson to try to pronounce it. The court, that's a factual determination that the court can't review. And when looked at under that framework, everything else falls into place. Because Ms. DeHart's 2008 notice of disagreement clearly was limited in scope to her spinal condition. It couldn't address a radiculopathy rating that hadn't been made. And it certainly couldn't address an effective date of a radiculopathy rating that hadn't been issued yet. So from that perspective, the NOD is too narrow to cover the effective date of her radiculopathy rating, which she's trying to challenge in this appeal before this court. Go ahead. How do the regulations that we've discussed with your friend play into your analysis? So what the regulations say, and we address this at page 22 of our brief, the regulations effectively say that the VA should rate separate disabilities under separate diagnostic codes. So the regulations establish that if the VA determines that there are distinct disabilities for a back condition in radiculopathy, then it should rate those under the appropriate diagnostic codes. In this case, the regulations have different diagnostic codes for spinal condition and for the radiculopathy. And does that answer the question which seems to be, some of us think, the central question here about whether this was merely a symptom, whether it was a secondary consideration? It does. The VA considered it to be a secondary condition that was consistent with the regulations that I've been quoting. But more to the point, that is a factual determination that has to be challenged at Veterans Court rather than at this court. Do you understand what your friend's argument is with respect to the regulations? So I understand his argument to be that radiculopathy is a complication or part of the back condition. But I just see that as being inconsistent with this court's precedent in Manzanaros, which recognizes that a secondary claim is a different claim than a primary claim. It's inconsistent with the aspects of the regulations that we cite in our brief at page 22. So to the extent I understand it correctly, it just seems to be belied by the regulatory language. And the other point I want to mention, too, is there are benefits to claimants to look at different disabilities and categorize them under separate diagnostic codes. It's complicated math, obviously. But generally speaking, claimants will often want to have the different disabilities to be seen as different disabilities and thus separately compensable under different DCs. Do you see the regulations? And I'm trying to parse the point you made just a moment ago. Do you see the regulations as establishing a basis for determining whether something is a secondary condition as opposed to a symptom? Or do you see the determination of whether something is a secondary condition or a symptom as being something that the regulations do not expressly address? The way I would put it is the regulations encourage the rating of separate disabilities separately. So the overarching question is, are there two separate disabilities?  Now, is there anything in the rating, in the regulations, that would tell us which this is? Is this a condition or symptom? I don't think so. I think the answer is that there's this broad standard of functional impairment that attaches to a disability. And if VA sees these as being two different functional impairments, then that is much closer to a factual determination than it is a legal determination. So that's how I would see this. This would be a factual issue, in our view, because the VA is trying to decide, exercising judgment, about whether to look at these as two separate disabilities or one single disability. You've done more veterans cases than I have. It strikes me, though, based on my history, that that's generally beneficial to the veteran to consider them as separate disabilities. I agree with that. I agree with that, Judge West. Once there is a separate disability, then if you're going to challenge that separate disability, you're required to file a NOT, an inundate, correct? That's right. That's right. So in this case, Ms. DeHart received the 2019 RO decision and received the notice of appeal rights with that decision. So that's injecting this new disability, this new radiculopathy rating, into the case. At that point, she did have an opportunity to file a notice of a disagreement, which she didn't do. The reason that this nevertheless returned to the board, I think what seems a little unusual here, is even though she didn't file an NOD, it still went to the board. The Veterans Court notes, and we note in our brief, that there's a regulation that says under 1938, under the legacy system, to the extent that the claimant doesn't get everything she's asking for, the claim still goes back to the board for the board to look at this issue again to assess what the RO did, essentially, under the remand. But the board's jurisdiction is still going to be defined by the NOD. So when that happened in 2021, the board is still looking at Ms. DeHart's appeal in light of what she had asked it to do in the 2009 NOD. So in 2021, they give her a 20% rating, and they say it's back to 2019 or something like that, and she filed no NOD on that. Right. If she had filed an NOD, not for an increased rating, but over the backdatedness of this, would the issue of the 2008 be legitimately before us, if she had done a second NO? We've got two potential NODs. She filed neither, in your view. So in that case, the 2009 NOD is going to cover the back claim, while the 2021 NOD is going to cover this new... So there would have been no basis to file an NOD saying, okay, I'm okay with the 20% rating, but I want to backdate it to 2008. We'd be arguing something different, but you'd still be up here arguing that she's not entitled to retroactivity back to 2008. So I think that's right, if I understand your question. Yes, I think that's right. So what you're saying is that, as I understand it, the fact that she didn't file an NOD with her such a reticulopathy in 2019 has no effect. Whether she had or not, she still wouldn't have been able to get retroactive benefits to 2009. So I'm trying to think through how she could. So the NOD would have been in 2019. Right. At that point, the effective date would be determined by the date of the claim and or the date that the symptoms were... The onset of the symptoms. The onset of the secondary condition. Yes, yes, that's right. The onset of the secondary condition. I'm not aware of any basis to send it all the way back to 2009. And I just can't think of any basis to go back that far. But that issue isn't before us. That issue isn't before us. That issue isn't before us. So when does a determination by the VA, just as a matter of rule, assume an adjudicative identity? So I'm going to try to answer it in the context of this case. In 2019, you have an RO decision. Mr. Hart can appeal that, but at the point, if she appeals it, then it goes up to the  If she doesn't appeal it, then it becomes final. So clearly, an RO decision that's not appealed does become final. So I would say the RO decision does have an adjudicative identity when it's issued, but it's subject to appeal, which can displace that identity. And the appeal defines the scope that she's at. And the NOD defines the scope. That's right. So no further questions. Court affirmed. Thank you. Mr. Hart filed a notice of disagreement with compensation for her back condition. That put that question of compensation into appellate status, where it stayed. To circle back to the conversation Judge Bryson, you and I were having about 4.25 and 4.71, I was remiss not to mention 3.155D2, which discusses whether they're, in this case, which falls really more closely under the Veterans Court's Faley decision and under this Court's Bean and Grantham decisions, because it's a complication. It's not part of the same. Even if you take this not part of the same deceased entity, it's a complication of the radiculopathy. And when she filed that broad notice of disagreement seeking compensation, and to me, listening to my friend's argument, that really gets to the nub of the confusion that the Veterans Court seemed to have with this case, which really is quite simple if you take it that the notice of disagreement put the back condition as a whole into appellate status. It starts with whether she should have filed the notice of disagreement in 2019, what she should have specified in it. All of those are unnecessary questions in a case like this. This is a legacy case, and so this runs under legacy rules. She filed a notice of disagreement, which conferred jurisdiction to the Board of Veterans Appeals. It stayed, and the length of this case helps to demonstrate how important it is to get it right, and to understand how this should be rated, and when jurisdiction is conferred, and by whom. Because it keeps going, and she doesn't have the strict pleading requirement to know exactly what it is. She knows that her back hurts. She knows that her right leg hurt. She said all that. It was in the evidence the entire time. And so the only thing- What happens if five years later her ankle hurts, her right ankle hurts? You can argue that that was covered as well. She could argue that. That is going to get a lot closer to the Manzanari set of facts, where we're under 3.310. That's going to get a lot closer to that, because it's not something that is a complication, unless it is, unless you can show that. Is that a factual decision? That'll be a factual decision if there's something that comes out at that point. Although, still, I think it would be- I still think that it could be a factual situation. Aren't you requiring the VA to have a crystal ball of some kind that looks into the- All downstream symptoms are covered by the 2009 NOD? No. No. No, Your Honor. Even the cases that were cited, there's lots of discussion in the VA world about how to rate back conditions. Lots of it. There's the language in 3.155. There's the 4.71 and 4.25 line of questioning. The Veterans Court got it right in Chavez and in Bailey. The Board of Veterans' Appeals does this all the time. They look at back conditions constantly. It is not a real novel question that lumbar radiculopathy stems from, and is a complication of a lumbar spine condition. It doesn't require a crystal ball at all, Your Honor. What in 3.155d2 specifically answers the question, as you suggested? 3.155 is what- I've got it here, and I'm looking at it, and I'm not seeing anything that is a bell ringer for you. It's a complication. The word complications in d2, the scope of a claim, right? That's what it's entitled. 3.155d2 is entitled scope of a claim. This is a claim for a low back condition, and the right leg radiculopathy, excuse me, Your Honor, requires an inquiry into entitlement of additional benefits for complications of the claimed condition. Well, doesn't that bring us back to the question of whether this falls into the symptoms of a secondary condition? If this is a secondary condition, it would not be covered by 3.155d2, I take it. It- that goes to Judge Raina's question as well, I believe, Judge Bryson, if I'm understanding it correctly, that if it were something like an ankle or something that you would have to prove is secondary to, it would get back to that. But again, I keep coming up against the question of whether it is our job to make a determination as to whether this is a secondary condition or a symptom slash complication. It is- this court can- this court can and has investigated the scope of notices of disagreement and whether one notice of disagreement puts a condition into appellate status. And so that is an inquiry that this court is well-versed in, being in Grantham, et cetera, and the rest of it is the proper adjudicatory tenor that the Board of Veterans Okay. Thank you, Your Honors.